**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| IN RE: | ALAN R. STUART | : | Chapter 13 |
| | Debtor(s) | : | |
| | | : | Bky. No. 05-19154ELF |

# O R D E R

**AND NOW,** Homecomings Financial, LLC ("Homecomings"), having filed a Motion for Relief from the Automatic Stay ("the Motion"), to which the Debtor filed a response;

**AND**, the court having held a hearing on January 10, 2008;

## Background

**AND**, Homecomings being the holder of a mortgage on the residential real property owned by the Debtor and his non-debtor spouse as a result of a consumer creditor transaction that was consummated in or about January 2004;

**AND**, on April 20, 2005, Homecomings (or an agent or a predecessor-in-interest) having obtained a judgment in mortgage foreclosure against the Debtor and his spouse in the Court of Common Pleas, Chester County;

**AND**, on May 9, 2005, the Debtor and his spouse having notified Homecomings' predecessor-in-interest of their intention to exercise their purported right to rescind the January 2004 consumer creditor transaction pursuant to the federal Truth in Lending Act, 15 U.S.C. §§1601, et seq. ("TILA"), see In re Stuart, 367 B.R. 541, 544 -45 (Bankr. E.D. Pa. 2007);

**AND**, on July 6, 2005, the Debtor having commenced this bankruptcy case by filing a petition under chapter 13 of the Bankruptcy Code;

**AND**, on July 13, 2005, the Debtor and his spouse having filed an adversary proceeding in this court, seeking to enforce the rescission of the subject mortgage under TILA;

**AND**, on November 10, 2005, Homecomings having filed a proof of claim (docketed on the Claims Register as Claim No. 9), asserting a claim secured by the Debtor's residence with a total balance of $396,491.16 and a prepetition arrearage of $32,426.14;

**AND**, by Order dated April 6, 2007, this court having dismissed the TILA claim without prejudice, see In re Stuart, 367 B.R. at 558;

**AND**, after the dismissal of the TILA rescission claim, the Debtor having filed an action in state court, seeking to enforce the purported rescission of the subject mortgage under TILA;

**AND**, on October 9, 2007, the Debtor having filed a Second Amended Chapter 13 Plan ("the Plan");

**AND**, the Plan providing, inter alia:

> 2. The Debtor shall submit to the supervision and control of the Trustee payments in the amount of $50 monthly for the first four months of the plan, and will thereafter increase his dpayments [sic] to $178.57 for the remaining 56 months of the plan.
>
> 3. In addition the Debtor and his wife ("the Borrowers") have filed an action in the Court of Common Pleas of Chester County to enforce their right to rescind a loan secured by a first mortgage on her home held by Decision One Mortgage, which they are advised was assigned to RFC Homecomings Financial American ("RFC"). The Borrowers will make any payments which are found to be due to RFC directly, outside of the plan. However, the automatic stay will remain in effect as too [sic] RFC to prevent the Borrowers from losing their residence proior [sic] to resolution of the validity of the rescission.

**AND**, upon the recommendation of the Standing Chapter 13 Trustee and in the absence of any objection by a party in interest, the Plan having been confirmed by Order of this court

dated November 13, 2007 and entered November 14, 2007 ("the Confirmation Order"), see Docket Entry No. 91;

**AND**, the Debtor having made no payments to Homecomings on account of the disputed mortgage obligation since the entry of the Confirmation Order;

**Applicable Legal Principles**

**AND**, 11 U.S.C. §§1322 and 1325(a)(5)[1] providing several alternative methods for the treatment of a secured claim in a chapter 13 plan;[2]

---

[1] Sections 1322 and 1325(a) were amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), effective as to cases filed beginning October 17, 2005. This case was filed prior to October 17, 2005. Therefore, the earlier versions of §§1322 and 1325(a) are applicable in this case.

[2] A chapter 13 debtor has four (4) options for treatment of a secured claim in a chapter 13 plan. First, the debtor may provide for full payment of the claim. See 11 U.S.C. §1325(a)(5)(B) (statutory provision in its pre-BAPCPA incarnation); In re Bryant, 323 B.R. 635, 645 (Bankr. E.D. Pa. 2005); see generally Till v. SCS Credit Corp., 541 U.S. 465, 468-469, 124 S.Ct. 1951, 1955 (2004) (discussing the methodology for determining the present value of a secured claim being paid in full through a stream of plan payments). Second, the debtor may provide for a "cure" of the prepetition delinquency, while maintaining contractual instalment payments falling due during the life of the plan. See 11 U.S.C. §1322(b)(5); Sapos v. Provident Inst. of Sav., 967 F.2d 918, 922 (3d Cir. 1992) (referring to §1322(b)(5) as a "cure and maintain" alternative to full payment of a secured claim). Third, the Debtor can surrender the secured property to the secured creditor. 11 U.S.C. §1325(a)(5)(C). Finally, the debtor may choose to "not provide" for the secured claim at all, in which case the claim and the lien pass through the bankruptcy case unaffected. See In re Waldman, 75 B.R. 1005 (Bankr. E.D. Pa. 1987); 8 Collier on Bankruptcy ¶1322.06[1][a] (15th rev. ed. 2006); see generally Lellock v. Prudential Ins. Co., 811 F.2d 186 (3d Cir. 1987) (even though underlying debt is discharged, lien created by the debt is not affected by the discharge order); Matter of Tarnow, 749 F.2d 464 (7th Cir. 1984) (a creditor's lien is not affected by the bankruptcy discharge, unless the lien is modified during the case pursuant to a specific Code provision, such as 11 U.S.C. §§522(f) or 1322(b)(2)). What might be considered a fifth option is the possibility that the debtor can convince the secured creditor to accept some treatment not set forth in the Code. See 2 Keith M. Lundin, Chapter 13 Bankruptcy ¶101.1 (3d ed. 2004).

**AND**, the Plan not "providing for" Homecoming's secured claim, within the meaning of 11 U.S.C. §1325(a)(5);[3]

**AND**, ordinarily, a holder of an allowed secured claim whose claim is not "provided for" in a chapter 13 plan being entitled to obtain relief from the automatic stay for cause under 11 U.S.C. §362(d), upon motion, after confirmation of the plan;[4]

**AND**, the Plan in this case specifically providing that "the automatic stay will remain in effect" pending the outcome of the pending state court action to determine the validity of the purported rescission of the Movant's mortgage by the Debtor and his spouse;

**AND**, 11 U.S.C. §1327(a) providing that the "provisions of a confirmed plan bind the debtor and each creditor . . . ."

---

[3] The Debtor suggests that because the Plan makes a reference to the Movant's claim and states that he (and his spouse) will "make payments" once the amount of the liability is determined, the Plan "provides for" the claim. I have difficulty with the proposition that a general reference to payment of a claim, after the completion of litigation in a non-bankruptcy forum, at some indeterminate time in the future and without concrete terms regarding payment amount, frequency and term, constitutes "providing for" a claim in a chapter 13 plan. See Rake v. Wade, 508 U.S. 464, 473, 113 S.Ct. 2187, 2192 (1993) (finding that a chapter 13 plan provided for the cure of a claim "by establishing repayment schedules for the satisfaction" of the arrears). Indeed, in this case, the Plan itself refers to the Movant's claim as being "outside of the plan." Because there are no terms for repayment of the Movant's claim and the Plan expression that the claim will be dealt with "outside" the Plan, I conclude that the Plan does not "provide for" the Movant's claim. Cf. In re Trusty, 2007 WL 3274420, at *1 n.5 (Bankr. E.D. Pa. Nov. 5, 2007) (discussing misuse of the term "outside the plan" to refer to treatment of claims being in a specific manner described in the plan with the debtor, not the trustee, acting as the disbursing agent).

[4] See 8 Collier on Bankruptcy ¶1325.06, at 1325-29 (15th rev. ed. 2007); In re Vincente, 260 B.R. 354, 356-58 (Bankr. E.D. Pa. 2001); In re Evans, 66 B.R. 506, 510 (Bankr. E.D. Pa. 1986) ("Being dealt with 'outside' the Plan may make it quite easy for the secured claimant to obtain relief from the automatic stay, and hence proceed exactly as if there had been no filing"), aff'd, 77 B.R. 457 (E.D. Pa. 1987).

**AND**, case law in this Circuit holding that "absent fraud, the provisions of a confirmed Chapter 13 plan bind the debtor and each creditor whose claim is provided for thereunder," In re Bryant, 323 B.R. 635, 638-39 (Bankr. E.D. Pa. 2005) (citing In re Szostek, 886 F.2d 1405 (3d Cir. 1989); accord In re Fesq, 153 F.3d 113, 120 (3d Cir. 1998) (citing Szostek for the principle that "the protection of the finality of Chapter 13 confirmation orders [is] more important than the obligation of the bankruptcy court and the trustee to ensure that a plan complied with the Code"); see also In re Pardee, 193 F.3d 1083, 1086 (9th Cir. 1999) (creditor who fails to file timely objection or appeal from confirmation order "cannot later complain about a provision of the plan that may be inconsistent with the Code") (citation omitted);[5]

**AND**, 11 U.S.C. §1327(a) reflecting a policy strongly favoring the finality of chapter 13

---

[5] For more than twenty-five (25) years, bankruptcy courts in this district have stated that the confirmation order "is . . . res judicata as to all justiciable issues decided or which could have been decided at the hearing on confirmation." In re Flick, 14 B.R. 912 (Bankr. E.D. Pa. 1981) (quoting In re Lewis, 8 B.R. 132 (D. Idaho 1981); accord In re Vandy, 189 B.R. 342, 349 (Bankr. E.D. Pa. 1995). This principle has been applied to issues involving the automatic stay. Several courts in this jurisdiction have held that §1327(a) precludes a creditor from obtaining relief from the automatic stay based on pre-confirmation events and that "cause" for relief under § 362(d)(1) may only be predicated on some significant post-confirmation event, such as a default in the debtor's performance of the confirmed plan. See In re Owens, 132 B.R. 293 (Bankr. E.D. Pa. 1991); In re Reice 88 B.R. 676 (Bankr. E.D. Pa. 1988); In re Wright, 54 B.R. 553 (Bankr. E.D. Pa. 1985); In re Clark, 38 B.R. 683 (Bankr. E.D. Pa. 1984); In re Pizzulo, 33 B.R. 740 (Bankr. E.D. Pa. 1983).

In this case, the Movant has made no allegation that there has been a post-confirmation default. It is true that the Debtor has not made post-confirmation monthly instalment payments on account of the Movant's secured claim. However, the Plan does not obligate the Debtor to do so. Thus, there has been no change in circumstances since confirmation and no post-confirmation default. The issue is whether the provision of the Plan that purports to restrict the Movant's rights under 11 U.S.C. §362(a) is binding on the Movant by virtue of 11 U.S.C. §1327(a).

confirmation orders;[6]

**AND**, this principle of finality applying to the Movant in this case, even though the Plan did not provide for the Movant's claim, because the plain language of the Code provides that a confirmed plan is binding on each creditor "<u>whether or not the claim of such creditor is provided for by the plan,</u>" 11 U.S.C. §1327(a) (emphasis added);

**AND**, although case law under §1327(a) suggests that an inherent exception to §1327(a) exists if the process leading to the entry of the confirmation order did not provide a creditor with procedural due process,[7] the court finding in this case that the process leading to the entry of the Order confirming the Plan and the notice given to the Movant regarding the provision of the Plan that restricts its rights under 11 U.S.C. §362(d) satisfied the requirements of procedural due process;[8]

---

[6]    The principle of finality is tempered somewhat by the right of the debtor and other parties, in some circumstances, to modify a confirmed plan. <u>See</u> 11 U.S.C. §1329.

[7]    <u>E.g.</u>, <u>In re Linkous</u>, 990 F.2d 160, 162 (4th Cir. 1993) (court cannot defer to confirmation order on res judicata grounds if it would result in a denial of due process in violation of the Fifth Amendment of the United States Constitution).

[8]    In this case, Homecomings had sufficient notice and opportunity to be heard with respect to the Plan. The Debtor's counsel served a copy of the Plan on Homecomings. <u>See</u> Docket Entry No. 87. Also, through the court's case management and electronic case filing system, the Plan was sent electronically in the ordinary course to the attorney who represented Homecomings in the adversary proceeding referenced above in the text and to the law firm who filed Homecomings proof of claim and the Motion. Mail and electronic service occurred more than thirty (30) days before the confirmation hearing.

Also, I have no concerns that the Plan provision at issue was obscured either by its drafting style or the manner of its placement in the body of the Plan. The provision maintaining the automatic stay in place was stated unambiguously and was located on the first page of the Plan. <u>See</u> <u>In re Huddle</u>, 2007 WL 2332390, *6 (Bankr. E.D. Va. Aug. 13, 2007) ("This is not a

---

plan, it must be stressed, in which the [the debtor's] intent . . . is buried deep within boilerplate"); In re Zimmerman, 275 B.R. 296, 301 (Bankr. C.D. Ill. 2001) (permitting plan to avoid creditor's lien only if plan is "sufficiently specific to put the affected creditor on notice that its lien will be lost if an objection to the plan is not made"); see generally In re Shook, 278 B.R. 815, 823 -825 (B.A.P. 9th Cir. 2002) (discussion of enforceability of plan provisions that determine value or avoid lien of secured creditor).

Finally, I acknowledge the existence of case law in which courts have declined to enforce a provision of a confirmed chapter 13 plan that is inconsistent with other provisions of the Bankruptcy Code. The guiding principle that I draw from these cases is that the enforceability of such a provision will depend upon whether the creditor has a reasonable expectation that some separate proceeding other than the confirmation process must be initiated to modify its rights. See, e.g., Whelton v. Educational Credit Mgt., Inc., 432 F.3d 150, 153 (2d Cir. 2005) (a plan provision providing for discharge of student loan is not enforceable because student loans are presumptively nondischargeable under 11 U.S.C. §523(a)(8) and the Federal Rules of Bankruptcy Procedure require the filing of an adversary proceeding before such a debt may be discharged); accord In re Ruehle, 412 F.3d 679, 684-85 (6th Cir. 2005). In light of the various tools for modifying the rights of secured creditors in a chapter 13 plan, see, e.g., 11 U.S.C. §1322(b)(2), 1325(a)(5), it is difficult to see how it is reasonable for a secured creditor to assume, without reading a debtor's proposed chapter 13 plan, that its rights will be unaffected by confirmation. It follows that, generally speaking, a secured creditor must read a proposed chapter 13 plan and object to confirmation if it believes that the proposed treatment of its claim does not comport with the requirements of the Code. As the court stated more than twenty (20) years ago in In re Bonanno, 78 B.R. 52, 57 (Bankr. E.D. Pa. 1987):

> [I]f the Code and Rules provide specific mechanisms to be employed when a debtor seeks to modify or determine a creditor's rights, the creditor may safely assume that its rights will be unaffected unless the debtor invokes those procedures. However, upon confirmation, section 1327 will bind a creditor to any plan provision involving matters which may permissibly be resolved through the confirmation process. . . . With respect to such plan provisions, a creditor is obliged to check the plan and its failure to object to confirmation will be binding, regardless whether the plan provision could have been the subject of a valid objection at confirmation.

In Bonanno, the court held that a provision of a confirmed plan that restricted an unsecured creditor's right to obtain relief from the chapter 13 co-debtor stay – relief that the creditor otherwise would have been entitled to under 11 U.S.C. §1301(c)(2) – was enforceable. Similarly, in this case, I conclude that, in the absence of fraud, a provision of the Plan restricting the Movant's statutory right to obtain relief from the automatic stay is enforceable. Because there is no allegation of fraud and the Movant was accorded due process, the principle of finality embedded in §1327(a) is paramount.

It is hereby **ORDERED** that the Motion is **DENIED.**

Date:  February 5, 2008

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

cc:   David A. Scholl
      Attorney for Debtor

      Andrew N. Spivack
      Attorney for Homecomings Financial, LLC